## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **FIRST HORIZON NATIONAL CORPORATION, FTN FINANCIAL SECURITIES CORP., and FIRST TENNESSEE BANK NATIONAL ASSOCIATION,** | )<br>)<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | ) **CIVIL ACTION**<br>) **NO.:** |
| **CERTAIN UNDERWRITERS AT LLOYD'S,** Specifically Syndicate Nos. 2987 BRT and 2488 AGM, Subscribing to Policy Nos. QA051908/1 and QA052008/1, and | )<br>)<br>)<br>)<br>) **JURY TRIAL DEMANDED** |
| **ASPEN INSURANCE UK LIMITED** Subscribing to Policy Nos. QA051908/1 and QA052008/1, | )<br>)<br>)<br>) |
| **Defendants.** | ) |

## COMPLAINT

Plaintiffs First Horizon National Corporation, FTN Financial Securities Corp., and First Tennessee Bank National Association (together, "First Horizon" or "Plaintiffs"), for their Complaint against Defendants, allege and aver as follows:

## PRELIMINARY STATEMENT

1. The Defendants in this case are large insurance companies that received substantial premiums from Plaintiffs in exchange for broad insurance coverage. Among other things, the insurance protected Plaintiffs against losses arising from third-party claims alleging wrongful acts related to Plaintiffs' rendering, or failure to render, professional services. This action arises from Defendants' refusal to honor the promises in their insurance policies with

respect to losses incurred in two underlying suits against Plaintiffs and others, both of which raised claims squarely within the policies' insuring agreement for professional services coverage. No exclusion in the policies bars or limits coverage owed to the Plaintiffs. Yet, Defendants have nonetheless repudiated their contractual coverage obligations and refused to reimburse Plaintiffs for losses covered by the policies. As a result of Defendants' wrongful conduct, to receive the benefit of the insurance coverage purchased from Defendants, Plaintiffs have been forced to file this action for breach of contract, declaratory judgment, and violation of the Tennessee Consumer Protection Act.

## PARTIES, RELATED PERSONS AND ENTITIES

2. Plaintiff First Horizon National Corporation is a corporation organized under the laws of the State of Tennessee with its principal place of business at 165 Madison Avenue, Memphis, Tennessee.

3. Plaintiff FTN Financial Securities Corp. ("FTN Financial") is a corporation organized under the laws of the State of Tennessee with its principal place of business at 845 Crossover Lane, Suite 150, Memphis, Tennessee. FTN Financial is ultimately a wholly-owned subsidiary of First Horizon National Corporation.

4. Plaintiff First Tennessee Bank National Association ("First Tennessee") is a banking institution chartered by the Office of the Comptroller of the Currency with its principal place of business in Memphis, Tennessee. First Tennessee is the immediate parent company of FTN Financial and a wholly-owned subsidiary of First Horizon National Corporation.

5. Defendants Certain Underwriters at Lloyd's, specifically Syndicate Nos. 2987 BRT and 2488 AGM ("Lloyd's"), are insurers engaged in the business of selling insurance contracts to commercial entities such as Plaintiffs in Tennessee and elsewhere. Syndicate Nos.

2987 BRT and 2488 AGM, which both maintain their principal places of business in the United Kingdom, subscribed to certain insurance policies covering Plaintiffs.

6. Defendant Aspen Insurance UK Limited ("Aspen") is, upon information and belief, a subsidiary of Aspen Insurance Holdings Limited and is a private limited liability company organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom. Aspen is an insurer engaged in the business of selling insurance contracts to commercial entities such as Plaintiffs in Tennessee and elsewhere.

7. Each of the Defendants subscribed to and provided coverage to Plaintiffs under Blended Insurance Programme Policy Number QA051908/1 (the "Primary Policy") and First Excess Blended Insurance Programme Policy Number QA052008/1 (the "Excess Policy") (together, the "Policies").

8. Defendants issued the Policies to First Horizon National Corporation as the Named Insured. The Policies provide coverage to, among others, First Horizon National Corporation, FTN Financial, First Tennessee, and certain of the foregoing entities' current or former employees. The Policies were delivered to First Horizon National Corporation at its headquarters in Memphis, Tennessee, and the insurance brokers that assisted in the placement of the Policies are located in Nashville, Tennessee.

9. In exchange for the Policies, First Horizon National Corporation paid Defendants substantial premiums from its Memphis, Tennessee headquarters. The losses sustained by Plaintiffs to date in the underlying lawsuits also were paid, and will continue to be paid, from Plaintiffs' Memphis, Tennessee headquarters.

10. The Policies subscribed to by Defendants both contain a "Service of Suit Clause (U.S.A.)" which provides, in pertinent part, as follows:

3

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. . . .
>
> It is further agreed that service of process in such suit may be made upon Mendes & Mount, LLP, 750 Seventh Avenue, New York, NY 10[0]19-6829, U.S.A., and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

11.     Stephen M. Folan ("Folan") was, at the relevant times, employed by FTN Financial.

12.     Jacques de St. Phalle ("de St. Phalle") was, at the relevant times, employed by FTN Financial.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

14.     This Court has personal jurisdiction over Defendants because Defendants have submitted to jurisdiction in this state by (a) transacting business in Tennessee, by virtue of selling the Policies at issue in this case to Plaintiffs in Tennessee; and (b) entering into contracts of insurance covering an entity located within Tennessee at the time of contracting. In addition, Defendants have consented, by the terms of the Policies, to suit in a court of competent jurisdiction in the United States, including this Court.

15.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Memphis, Tennessee.

## FACTUAL ALLEGATIONS

16.     Plaintiffs incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-15 above.

### The Insurance Policies

17.     Plaintiffs purchased the Primary Policy from Defendants with an effective date of August 1, 2008 to August 1, 2009 (the "Policy Period").  The Primary Policy has an applicable limit of $10 million and was the first layer of insurance coverage for Plaintiffs above a $15 million self-insured retention (similar to a deductible) maintained by Plaintiffs.  The Primary Policy provides broad insurance protection for Plaintiffs against losses arising from third-party claims alleging wrongful acts on the part of Plaintiffs and their current or former employees.  A true and correct copy of the Primary Policy is attached to this Complaint as Exhibit A.

18.     The Primary Policy contains several separate coverage sections providing different types of insurance to Plaintiffs, including the "Financial Institution Professional Liability" coverage section ("Professional Liability coverage section").  The Professional Liability coverage section of the Primary Policy contains the following insuring agreement:

> This policy shall indemnify the Insured for Loss arising from a
> Claim first made against the Insured during the Policy Period . . .
> and reported in writing to Underwriters pursuant to terms of this
> policy for any actual or alleged Wrongful Act of any Insured (or
> of any other person for whose actions the Insured is legally
> responsible) in the rendering or failure to render Professional
> Services.

19.     If a particular claim against Plaintiffs is covered under the Primary Policy, the Defendants are obligated to pay Plaintiffs' "Loss," which is defined to include, among other things, "damages, judgments, settlements and Defense Costs."

5

20. "Defense Costs" are defined in the Primary Policy to include, among other things, fees, costs, and expenses resulting from "the investigation, adjustment, defense and/or appeal of a Claim, Loss or against [sic] an Insured."

21. The Primary Policy provides that Plaintiffs must obtain the Defendants' consent to enter into any settlement, which consent shall not be unreasonably withheld by Defendants.

22. Plaintiffs also purchased the Excess Policy from Defendants. Except as otherwise provided in the Excess Policy, it adopts all of the same conditions, limitations, and other terms provided in the Primary Policy, including the same insuring agreement for Professional Liability coverage. The Excess Policy provided Plaintiffs an additional $15 million in insurance for the Policy Period, above the $15 million retention and the $10 million first layer of insurance provided by the Primary Policy. Together, the Policies provide Plaintiffs with $25 million in insurance coverage above a $15 million self-insured retention for a third-party claim covered under the Policies. A true and correct copy of the Excess Policy is attached to this Complaint as Exhibit B.

## The Lawsuits Underlying This Coverage Action

23. During the Policy Period, FTN Financial and de St. Phalle were served by Frederick J. Grede, Liquidation Trustee (the "Trustee") of Sentinel Management Group, Inc. ("Sentinel"), with two lawsuits. Folan was served by the Trustee with one of the two lawsuits. First Tennessee was subsequently added as a defendant in both lawsuits. These lawsuits are captioned as follows: *Frederick J. Grede v. Stephen M. Folan, et al.*, Case No. 08CV6587 (N.D. Ill.) (the "Estate Case"), and *Frederick J. Grede v. FTN Financial Securities Corp., et al.*, Case No. 09CV2258 (N.D. Ill.) (the "Customer Case") (collectively, "the Litigation" or "the Grede Lawsuits"). The Estate Case and Customer Case were filed on November 17, 2008 and April 13,

6

2009, respectively. True and correct copies of the currently operative complaints in the Estate Case and the Customer Case are attached to this Complaint as Exhibits C and D, respectively.

24. Plaintiffs provided timely notice to Defendants of the Grede Lawsuits.

25. In the Estate Case, the Trustee alleges that Folan, de St. Phalle, and FTN Financial engaged in certain errors and omissions in the rendering of or failure to render professional services for a fee in the course of selling certain structured finance products known as "PreTSLs" to Sentinel, which resulted in losses to Sentinel. Among other claims, the Trustee contends that FTN Financial, de St. Phalle, and Folan knew that the PreTSLs were unsuitable investments for Sentinel, yet continued to sell the PreTSLs to Sentinel. The Trustee seeks approximately $114 million in damages from the Defendants in the Estate Case based on the unsuitability claims alone. The Trustee also alleges that First Tennessee was involved in the creation and placement of the PreTSLs that were sold to Sentinel.

26. In the Customer Case, the Trustee alleges that de St. Phalle and FTN Financial engaged in certain errors and omissions in the rendering of or failure to render professional services for a fee in the course of selling the PreTSLs to Sentinel, which resulted in losses to Sentinel's customers. Among other claims, the Trustee contends that FTN Financial and de St. Phalle aided and abetted breaches of fiduciary duty by Sentinel and Sentinel's head trader related to Sentinel's purchases of allegedly unsuitable securities from Plaintiffs. The Trustee seeks approximately $85 million in damages from the Defendants in the Customer Case based on the unsuitability claims alone. The Trustee also alleges that First Tennessee was involved in the creation and placement of the PreTSLs that were sold to Sentinel.

27. The Litigation is scheduled for mediation on July 20-21, 2011, and a jury trial is scheduled to begin on August 15, 2011.

28. Plaintiffs have vigorously defended against the Trustee's allegations in the Litigation and, through June 2011, have incurred more than $7 million in defense costs in excess of the Policy's $15 million retention, thus triggering Defendants' coverage obligations under the Primary Policy.

## Defendants' Refusal to Honor
## Their Policy Obligations to Plaintiffs

29. Plaintiffs kept Defendants apprised of material events in the defense of the Litigation. Specifically, Plaintiffs have provided Defendants with various documents related to the Litigation containing detailed information about the Trustee's claims, including the alleged potential liability and damages sought in the Grede Lawsuits. Such documents include, among others, the various amended complaints, multiple expert and rebuttal expert reports, and legal briefing filed by the parties to the Litigation.

30. Defendants also have participated in numerous of Plaintiffs' quarterly claims-update conference calls, during which Plaintiffs provided an update on the Litigation and responded to any document or information requests from the Defendants regarding the Litigation.

31. During these quarterly calls and at other times, Plaintiffs have notified Defendants of the current defense costs incurred by Plaintiffs in the Litigation and that Plaintiffs are seeking recovery from Defendants for those defense costs in excess of the Primary Policy's $15 million deductible. Through June 2011, in defending the Litigation Plaintiffs have incurred more than $7 million in defenses costs in excess of the retention.

32. In a letter to Plaintiffs dated October 12, 2010, Defendants state that "coverage is unavailable for the Grede Litigation." In this letter, Defendants cite and wrongfully rely upon the Policy's "insolvency exclusion" as the reason for their denial of coverage.

8

33. Plaintiffs responded to Defendants in a letter dated April 25, 2011. In their letter, Plaintiffs explained that, based on the very terms of the insolvency exclusion, Defendants have no substantial, sound, or good-faith legal basis for invoking that exclusion to preclude coverage for the Litigation.

34. In June 2011, Plaintiffs notified Defendants of Plaintiffs' plans to engage, at the Trustee's request, in mediation of the Grede Lawsuits. In anticipation of the mediation, and in anticipation that Defendants would participate in the mediation based on their contractual obligations to insure Plaintiffs for covered loss incurred related to the Litigation, Plaintiffs provided Defendants with additional documents and information related to the Litigation.

35. While Plaintiffs believed and continue to believe that the Trustee's claims are without merit and that Plaintiffs have sound defenses, in light of the uncertainties and risks inherent in any jury trial, on July 12, 2011 Plaintiffs requested that, prior to the scheduled mediation, Defendants authorize and agree to fund, up to an amount that is within the Policy limits, any settlement that might be reached with the Trustee to resolve the Litigation.

36. On July 14, 2011, Defendants authorized Plaintiffs to settle the Litigation with their own funds up to the limits of the Policies, but refused to pay any amount to cover a potential settlement of the Litigation, or any loss Plaintiffs have incurred or will incur in the Litigation. Defendants' letter constituted a complete denial of coverage under the Policies for the claims in the Grede Lawsuits.

37. Despite Defendants' having had months to consider Plaintiffs' explanations for why the insolvency exclusion cannot apply to bar coverage for the claims in the Grede Lawsuits, Defendants' July 14, 2011 letter did not address those explanations, but merely reiterated the same bare and unsupported assertion stated in Defendants' earlier October 12, 2010 letter.

38. Defendants have no good-faith basis or substantial legal grounds for taking the position that the insolvency exclusion applies to bar coverage for the Litigation. By denying coverage, Defendants are violating the terms of the Policies.

39. Defendants' denial of coverage and failure to respond to Plaintiffs' explanations for why the insolvency exclusion is not viable has left Plaintiffs without insurance coverage on the eve of mediation and trial, in lawsuits in which the Trustee asserts hundreds of millions of dollars in alleged losses attributable to Plaintiffs. Defendants have wrongfully refused coverage, putting their financial interests above their insureds' and leaving Plaintiffs to simply roll the dice at trial.

40. The defense costs incurred through June 2011 in defending the Litigation exceed Plaintiffs' retention by more than $7 million, thereby triggering coverage under the Primary Policy. Plaintiffs continue to incur defense costs related to the Grede Lawsuits that are covered under the Primary Policy.

41. Defendants' baseless denial of coverage has left Plaintiff with more than $7 million in unreimbursed defense costs and has exposed Plaintiffs to significant potential additional damages related to the Litigation.

## COUNT I
## BREACH OF CONTRACT

**(FOR REFUSING TO REIMBURSE PLAINTIFFS FOR DEFENSE COSTS INCURRED IN DEFENDING THE GREDE LAWSUITS)**

42. Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-41 above.

43. The Policies are insurance contracts pursuant to which Defendants were paid substantial premiums in exchange for providing broad insurance coverage, including coverage for losses arising from the Litigation.

44. By refusing to reimburse Plaintiffs for defense costs incurred in the Grede Lawsuits, Defendants have expressly and wrongfully repudiated their coverage obligations and declined to honor the promises they made when they issued the Policies. Defendants' wrongful repudiation of their coverage obligations to Plaintiffs is a breach of the Policies.

45. As a result of Defendants' breach of the Policies, Plaintiffs have sustained and will continue to sustain substantial damages, in an amount to be established at trial, for which Defendants are liable to Plaintiffs.

## COUNT II
## BREACH OF CONTRACT

### (FOR REFUSING TO AGREE TO FUND A SETTLEMENT OF THE GREDE LAWSUITS UP TO THE POLICY LIMITS)

46. Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-45 above.

47. The Policies are insurance contracts pursuant to which Defendants were paid substantial premiums in exchange for providing broad insurance coverage, including coverage for losses arising from the Litigation.

48. By unreasonably withholding consent to agree to fund a settlement of the Litigation, or any other loss in the Grede Lawsuits, up to the limits of the Policies, Defendants have expressly and wrongfully repudiated their coverage obligations and declined to honor the promises they made when they issued the Policies. Defendants' wrongful repudiation of their coverage obligations to Plaintiffs is a breach of the Policies.

49. As a result of this breach of the Policies, Plaintiffs have sustained and will continue to sustain substantial damages, in an amount to be established at trial, for which Defendants are liable to Plaintiffs.

## COUNT III
## DECLARATORY JUDGMENT

50. Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-49 above.

51. The Policies are insurance contracts pursuant to which Defendants were paid substantial premiums in exchange for providing broad insurance coverage, including coverage for losses arising from the Grede Lawsuits.

52. By denying coverage for loss related to the Litigation, Defendants have expressly and wrongfully repudiated their coverage obligations and declined to honor the promises they made when they issued the Policies. Defendants' wrongful repudiation of their coverage obligations to Plaintiffs includes their failure to reimburse defense costs incurred in the Litigation and to cover any settlement, future defense costs, or other losses incurred in the Litigation.

53. An actual case or controversy exists regarding Plaintiffs' rights and Defendants' obligations under the Policies to pay losses incurred by Plaintiffs related to the Grede Lawsuits.

54. Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court establishing the following:

    (a) Plaintiffs' losses arising from the defense of the Grede Lawsuits are insured losses under the Policies, and

    (b) Defendants are obligated to pay Plaintiffs for the full amount of their respective shares of the defense costs incurred in the Grede Lawsuits, and any other insured losses that may be incurred in the Litigation, up to the full applicable $25 million limit of the Policies.

## COUNT IV
## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

55. Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-54 above.

56. The Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.*, prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce," including "engaging in any act or practice which is deceptive to the consumer or any other person."

57. The representations, omissions, and other conduct of Defendants in handling Plaintiffs' claims under the Policies, including Defendants' denying coverage on the eve of mediation by asserting that the insolvency exclusion applies, but without addressing Plaintiffs' explanation that the exclusion does not apply, and despite Defendants' having no sound, good-faith, or substantial legal grounds for doing so, constitute unfair or deceptive acts or practices in violation of the TCPA, entitling Plaintiffs to actual damages plus attorneys' fees and costs.

58. Defendants' unfair or deceptive acts or practices in violation of the TCPA affected trade or commerce as defined in the TCPA.

59. As a direct result of Defendants' unfair or deceptive acts or practices in violation of the TCPA, Plaintiffs have suffered an ascertainable loss of money or property, in an amount to be determined at trial, including but not limited to the costs associated with seeking from Defendants the insurance coverage to which it is entitled under the Policies.

60. Defendants' unfair or deceptive acts or practices in violation of the TCPA were willful and knowing, entitling Plaintiffs to treble damages.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray that the Court:

(1) enter judgment on Count I of the Complaint in favor of Plaintiffs and against all Defendants;

(2) enter judgment on Count I of the Complaint for compensatory damages in favor of Plaintiffs and against all Defendants in an amount sufficient to compensate Plaintiffs for all losses sustained as a result of Defendants' breach of the Primary Policy and refusal to pay Plaintiffs for defense costs incurred in the Litigation;

(3) enter judgment on Count II of the Complaint in favor of Plaintiffs and against all Defendants;

(4) enter judgment on Count II of the Complaint for compensatory damages in favor of Plaintiffs and against all Defendants in an amount sufficient to compensate Plaintiffs for all losses sustained as a result of Defendants' breach of the Primary Policy and wrongful repudiation of their contractual obligations to fund any settlement or other losses incurred in the Litigation;

(5) enter a declaratory judgment on Count III of the Complaint in favor of Plaintiffs and against all Defendants, declaring as follows:

　　(a) Plaintiffs' losses arising from the defense of the Litigation are insured losses under the Policies, and

　　(b) Defendants are obligated to pay Plaintiffs for the full amount of their respective shares of the defense costs incurred in the Litigation, and any other insured losses that may be incurred in the Litigation, up to the full applicable $25 million limit of the Policies.

(6) enter judgment on Count IV of the Complaint in favor of Plaintiffs and against all Defendants;

(7) enter judgment on Count IV of the Complaint for compensatory damages, attorneys' fees and costs of this litigation, and treble damages, in favor of Plaintiffs and against all Defendants as a result of Defendants' willful and knowing unfair or deceptive acts or practices in violation of the TCPA;

(8) award to Plaintiffs and against all Defendants prejudgment interest, to be calculated according to law, to compensate Plaintiffs for the loss of use of funds caused by Defendants' wrongful refusal to pay Plaintiffs for losses arising from the wrongful refusal to reimburse defense costs and to cover any other losses related to the Litigation;

(9) award to Plaintiffs and against all Defendants all costs incurred in obtaining the relief sought in this Complaint, including attorneys' fees; and

(10) award Plaintiffs such other, further, and additional relief as this Court deems just and appropriate.

## JURY DEMAND

61. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that all claims in this action be tried to a jury.

Dated: July 18, 2011

Respectfully submitted,

*/s/* Thomas Lang Wiseman
Thomas Lang Wiseman
Tennessee Bar No. 18293
Christopher Lynn Patterson
Tennessee Bar No. 23823
WISEMAN BRAY PLLC
1665 Bonnie Lane, Suite 106
Memphis, TN 38016
*Attorney for Plaintiffs*

Anthony P. Tatum
Georgia Bar No. 306287
Michael Wakefield
Georgia Bar No. 950517
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA  30309
404-572-4600 (Phone)
404-572-5138 (Fax)
ttatum@kslaw.com
mwakefield@kslaw.com
*Attorneys for Plaintiffs*