# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **FIRST HORIZON NATIONAL CORPORATION**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs**, | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:11-cv-02608** |
| | ) | |
| **CERTAIN UNDERWRITERS AT LLOYD'S**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (Dkt. No. 101)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………..iii-v

INTRODUCTION…………………………………………………………………..…1

FACTUAL BACKGROUND………………………………………………………..…2

    I.      THE INSURANCE POLICIES…………………………………………...2

    II.    THE TRUSTEE LAWSUITS…………………………………………......3

          A.    Sentinel Managed Short-Term Cash Investments for Clients……..……..4

          B.    First Horizon Sells Sentinel PreTSLs, a Risky, Highly Illiquid
                and Unsuitable Collateralized Debt Obligation……………………........4

          C.    Trustee Alleges That First Horizon Bribed and Duped Sentinel
                Into Purchasing PreTSLs, Causing Sentinel's Insolvency……………..…5

ARGUMENT…………………………………………………………………….…6

    I.      LEGAL STANDARD……………………………………………………...6

    II.    APPLICABLE PRINCIPLES OF POLICY INTERPRETATION………..…….7

    III.   COVERAGE IS BARRED BY THE INSOLVENCY EXCLUSION……….......8

          A.    The Trustee Lawsuits Arise out of Sentinel's
                Bankruptcy and Insolvency……………..…………………………8

          B.    Sentinel Is an Entity Whose Insolvency Triggers
                the Insolvency Exclusion…………………….………………..……..9

    IV.   FIRST HORIZON'S INTERPRETATION OF THE INSOLVENCY
          EXCLUSION IS UNREASONABLE, RUNS AFOUL OF THE
          APPLICABLE RULES OF CONSTRUCTION, AND FINDS
          NO SUPPORT IN EXISTING CASE LAW…………………………….…11

          A.    The Limitation that First Horizon Grafts on to the Insolvency
                Exclusion Is Inconsistent with the Plain Language of the Policy..……...11

          B.    First Horizon's Alleged Expectations of Coverage Do Not Alter
                The Parties' Intent as Embodied in the Primary Policy……………..……13

i

C.    The Exception to the Insolvency Exclusion Provides No Support
      to First Horizon's Attempt to Rewrite the Insolvency Exclusion………..14

D.    First Horizon's References to Positions of Insurers in Other
      Cases Involving Other Policies Are Misleading and Do Not
      Support First Horizon's Interpretation……………..…………………16

E.    First Horizon's Unwritten Limitation to the Insolvency Exclusion
      Is Not Supported By Case Law…………………………………………..18

CONCLUSION…………………………………………………………………………..20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Air Eng'g Metal Trades Council & Affiliated Unions, AFL-CIO v. Aro, Inc.*,
　　307 F.Supp. 934 (E.D. Tenn. 1969)……………………………….……………………6

*Am. Auto Ins. Co. v. Mayfield*, 287 F. Supp. 2d 661 (N.D. Tex. 2003)………………………19

*Am. Auto. Ins. Co. v. Valentine*, 131 F. App'x 406 (4th Cir. 2005)………..……………...18, 19

*Aspen Ins. UK, Ltd. v. Fiserv, Inc.*, No. 1:09-cv-02770-CMA-CBS (D. Colo.)…………16, 17, 18

*Assoc. Comm. Bancorp, Inc. v. Travelers Cos., Inc.*,
　　No. 3:0-CV-1357, 2010 WL 1416842 (D. Conn. Apr. 8, 2010),
　　*aff'd* 421 Fed. App'x 125, 2011 WL 1781908 (2d Cir. 2011)……………9, 15, 16, 17, 19

*Barron v. Scaife*, 535 So. 2d 830 (La. Ct. App. 1988)………...…………………………..9, 18, 19

*Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669 (6th Cir. 2011)……………12-13

*C.T.S.C. Boston, Inc. v. Cont'l Ins. Co.*,
　　25 Fed. App'x 320, 2001 WL 1667279 (6th Cir. 2001)………………………......……...14

*Certain Underwriters at Lloyd's, London v. Alkabsh*,
　　No. 09-2711, 2011 WL 938407 (W.D. Tenn. March 15, 2011)…………....……………...13

*City of Lewisburg v. Nutmeg Ins. Co.*,
　　No. 01A01-9511-CH-00499, 1996 WL 411632 (Tenn. Ct. App. July 24, 1996)…... ……8

*Columbia Cas. Co. v. Ga. & Fla. Railnet, Inc.*, 542 F.3d 106 (5th Cir. 2008)……………..……16

*Emp'rs Ins. of Wausau v. Tri World Ins. Agency, Inc.*,
　　134 F.3d 377, 1998 WL 23677 (9th Cir. 1998)………….………………………………18

*First Am. Discount v. CFTC*, 222 F.3d 1008 (D.C. Cir. 2000)………………….……………11

*Greenwood Ins. Grp., Inc. v. U.S. Liab. Ins. Co.*, 157 S.W.3d 444 (Tex. App. 1998)…….…….18

*Harrell v. Minn. Mut. Life Ins. Co.*, 937 S.W.2d 809 (Tenn. 1996)………………………...…….7

*In re Sentinel Mgmt. Grp., Inc.*, 398 B.R. 281 (Bankr. N.D. Ill. 2008)………………….…..3, 10, 11

*Kiser v. Wolfe*, 353 S.W.3d 741 (Tenn. 2011)…………………………………….……………..14

*Kleneic v. White Marine Lake Corp.*, 533 N.Y.S.2d 909 (N.Y. App. Div. 1988)…..……….18, 19

*Ky. Nat. Ins. Co. v. Lawrence,* 187 Fed. App'x 423 (6th Cir. 2006)……………...…………..10

*MDL Capital Mgmt., Inc. v. Federal Ins. Co.*,
    Nos. 05cv1396, 06cv03899, 2006 WL 2974165, (W.D. Pa. Oct. 16, 2006),
    *rev'd on other grounds,* 274 Fed. App'x 169 (3d Cir. 2008)……..……………………....13

*Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13 (Tenn. Ct. App. 2002)……………….....7

*McKimm v. Bell*, 790 S.W.2d 526 (Tenn. 1990)………………………………..………….7

*Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999)……………………………...…...……6

*Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885 (Tenn. 2002)………..8, 13

*Rainey v. Stansell*, 836 S.W.2d 117 (Tenn. Ct. App. 1992)……………………………………7

*Roddy Mfg. Co. v. Olsen*, 661 S.W.2d 868 (Tenn. 1983)……………………………...……...11

*SEC v. Sentinel Mgmt. Grp., Inc.*,
    No. 07 C 4684, 2012 WL 1079961,(N.D. Ill. March 30, 2012)………………….…..…10

*Smith v. Cont'l Cas. Co.*,
    No. 07-CV-1214, 2008 WL 4462120, (M.D. Pa. Sept. 30, 2008),
    *aff'd on other grounds*, 347 Fed. App'x 812 (3d Cir. 2009)…………...…………9, 18-19

*Sony Computer Entm't Am., Inc. v. Am. Home Assurance Co.*,
    532 F.3d 1007 (9th Cir. 2008)……………………………………….…….……16

*Southeast Mental Health Ctr., Inc. v. Pac. Ins. Co., Ltd.*,
    439 F. Supp. 2d 831, (W.D. Tenn. 2006)………………………………….…....12

*St. Paul Fire & Marine Ins. Co. v. Cohen-Walker, Inc.*,
    320 S.E.2d 385 (Ga. Ct. App. 1984)……………………………….…….....9, 18

*Starnes Family Office, LLC v. McCullar,*
    Nos. 10-2186, 11-2262, 2011 WL 38623333 (W.D. Tenn. Sept. 1, 2011)……....…..6, 7

*Sumner Cnty. Bd. of Educ. v. Carden Co.*, No. M2005-2670-COA-R3-CV,
    2006 WL 2069413 (Tenn. Ct. App. July 25, 2006)……………………...………..7, 8

*Swanson v. Mid-South Title Ins. Corp.*, 692 S.W.2d 415 (Tenn. Ct. App. 1984)………....…7, 8, 13

*Thompson v. Am. Gen. Life & Accident Ins. Co.*,
    448 F. Supp. 2d 885 (M.D. Tenn. 2006)………………………….………...12, 13, 14

*Transam. Ins. Co. v. Snell*, 627 So. 2d 1275 (Fla. Dist. Ct. App. 1993)……………………….9, 18

*Transam. Ins. Co. v. South*, 975 F.2d 321 (7th Cir. 1992)……………………..………...9, 19

*Travelers Ins. Co. v. Aetna Ca. & Surety Co.*, 491 S.W.2d 363 (Tenn. 1973)……………………8

*United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445 (5th Cir. 2007)…………………..…16

*Wright v. Employers Reins. Corp.*,
    No. C 04-03710 JW, 2005 WL 756618 (N.D. Cal. Mar. 31, 2005)…………...…….…..19

*Wright-Miller v. Miller*, 984 S.W.2d 936 (Tenn. App. 1998)……………………..………..11

*Yarnell v. Transam. Life Ins. Co.*, 694 F. Supp. 2d 857 (E.D. Tenn. 2010)………………..…..7

*Zurich Specialties London Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*,
    650 F. Supp. 2d 1064 (C.D. Ca. 2009), *aff'd* 425 Fed. App'x 554 (9th Cir. 2011)….19-20

**Statutes**

11 U.S.C. §101(6)………………………………………………………………………..11

**Secondary Sources**

Black's Law Dictionary (8th ed. 2004)……………………………………...………....10

## <u>INTRODUCTION</u>

First Horizon National Corporation and some of its subsidiaries (collectively "First Horizon") demand that their insurers reimburse them for more than $20 million in defense costs and a $36-plus million settlement that First Horizon alleges it incurred in connection with two lawsuits brought by a liquidation trustee for a defunct entity, Sentinel Management Group, Inc. ("Sentinel"). In these underlying lawsuits (the "Trustee Lawsuits"), the Trustee alleged that First Horizon used a series of commercial bribes to sell Sentinel over $400 million of unsuitable, risky and illiquid securities known as "PreTSLs." The lawsuits also allege that First Horizon breached promises to make a market for the PreTSLs by refusing to buy these securities back from Sentinel when Sentinel was in dire need of cash, thus precipitating Sentinel's bankruptcy and eventual liquidation.

Defendant insurers, Certain Underwriters at Lloyd's, Aspen Insurance UK, Limited (collectively, "Lloyd's"), U.S. Specialty Insurance Company ("U.S. Specialty"), and Federal Insurance Company ("Federal") (together, the "Insurers"), have identified several separate policy provisions that preclude or limit coverage for the Trustee Lawsuits. First Horizon's Motion for Partial Judgment on the Pleadings (the "Motion"), however, picks out only one of these policy provisions and asserts one argument. First Horizon asks the Court to rule that the "Insolvency Exclusion" must be read to apply only in cases involving the insolvency of entities that are not customers of First Horizon – even though it says nothing of the kind.

Subject to an exception, the Insolvency Exclusion bars coverage for any claim:

"alleging, arising out of, based upon or attributable to the bankruptcy, insolvency, conservatorships, receivership or liquidation of . . . **any** broker or dealer in securities or commodities . . . or **any** . . . investment company . . . or **any Insured**."

"Any" means "any." There is no carve out for "customers of First Horizon."

1

Indeed, instead of relying on the language that does apply, First Horizon reads its argument into the exception all parties agree does ***not*** apply.  The exclusion continues "provided, however, this exclusion will not apply to **Wrongful Acts** solely in connection with an **Insured's** investment on behalf of the claimant in the stock of any of the foregoing entities."  First Horizon does not suggest that this language is implicated in this case.  But First Horizon suggests that the presence of the exception is inconsistent with reading the Insolvency Exclusion as it is written to apply regardless of whether the claim arises out of the insolvency of First Horizon's customers.  This construction is incorrect.  Narrow exceptions create exceptions for what they discuss.  They do not rewrite broad language to carve out matters they do not discuss.

Finally, First Horizon suggests that the Insurers have taken inconsistent positions with respect to the application of similar insolvency exclusions.  This is not true and would not change the wording of the policy even if it were.

## FACTUAL BACKGROUND

## I.   THE INSURANCE POLICIES.

Lloyd's issued a "Financial Institution Professional Liability Insurance Policy," Policy No. QA051908/1 (the "Primary Policy"), to First Horizon National Corporation for the policy period of August 1, 2008 to August 1, 2009.  Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint ("SAC") of Lloyd's (*Doc. No. 80*), ¶¶1, 24 ("Lloyd's Answer").  Lloyd's, U.S. Specialty, and Federal each issued one or more excess policies (the "Excess Policies" and, together with the Primary Policy, the "Policies") above the Primary Policy for the same policy period, which generally "follow form" to the Primary Policy except as otherwise indicated.  Lloyd's Answer ¶¶1, 7, 11, 14, 28-31; SAC (*Doc. No. 79*), ¶17.

The Primary Policy, and by incorporation, the Excess Policies, provide specified

2

coverage to "Insureds" pursuant to the express terms, conditions and limitations of the Policies. Lloyd's Answer ¶¶7, 24, 28-31.  The Insuring Agreements in the Primary Policy are subject to a number of exclusions.  Primary Policy (*Doc. No. 6-1*), at 68 (attached as Exhibit A to Plaintiffs' First Amended Complaint).  The Insurers have raised a number of these exclusions, but the only exclusion challenged in the present motion is exclusion (m), the "Insolvency Exclusion."[1]  The Insolvency Exclusion states:

> Underwriters shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured** . . .
>
> (m)   alleging, arising out of, based upon or attributable to the bankruptcy, insolvency, conservatorship, receivership or liquidation of, or suspension of payment by, any broker or dealer in securities or commodities, or any bank or banking firm, or any insurance or reinsurance entity, investment company or investment banker or any **Insured**; provided, however, this exclusion will not apply to **Wrongful Acts** solely in connection with an **Insured's** investment on behalf of the claimant in the stock of any of the foregoing entities[.]

*Id.* at 68, 71.

## II.   **THE TRUSTEE LAWSUITS.**

On August 17, 2007, Sentinel filed a bankruptcy petition that eventually resulted in Sentinel's liquidation.  *See In re Sentinel Mgmt. Grp., Inc.*, 398 B.R. 281, 290 (Bankr. N.D. Ill. 2008).  Thereafter, Frederick J. Grede ("Grede"), as the Liquidation Trustee for Sentinel, filed two lawsuits against two of First Horizon's subsidiaries, FTN Financial Securities Corp. ("FTN"), First Tennessee Bank N.A., and two of FTN's employees.  *See Grede v. Stephen M. Folan, et al.*, 08-cv-6587 (N.D. Ill.) (the "Estate Action"), and *Grede v. FTN Finan. Securities*

---

[1] Among other relevant provisions, the Insurers have denied coverage and/or asserted affirmative defenses to Plaintiffs' claim for coverage based on the "Regulatory Exclusion" (exclusion 3(i)); the "Diminution in Value" exclusion (exclusion 3(p)); the "Specialist/Market Maker Exclusion" (exclusion (v)); and because Plaintiffs' claimed damages do not fall within the definition of "Loss."  *See, e.g.,* Lloyd's Answer at 32-35 (Third, Fourth, Sixth and Seventh Affirmative Defenses).

*Corp., et al.*, 09-cv-2258 (N.D. Ill.) (the "Creditor Action") (collectively referred to as the "Trustee Lawsuits").[2]

### A.     Sentinel Managed Short-Term Cash Investments for Clients.

According to the Complaints in the Trustee Lawsuits, Sentinel was both a registered investment adviser and registered futures commission merchant ("FCM") and primarily managed investments of short-term cash for various clients, including futures commission merchants, hedge funds, financial institutions, pension funds, and individuals.  Est. Compl. ¶¶2, 10, 16; Crd. Compl. ¶¶2, 19-20.  Sentinel was subject to strict investment standards issued by the Commodity Futures Trading Commission ("CFTC") that required Sentinel to invest its customers' funds exclusively in safe, highly liquid securities, such as high-grade government securities and certain investment-grade corporate bonds.  Est. Compl. ¶¶2, 18-19; Crd. Compl. ¶¶2, 22-23.  Sentinel solicited clients by offering them the opportunity to participate in several safe investment programs, each of which had its own investment policy designed to meet the requirements and risk profiles of different clients.  Est. Compl. ¶17; Crd. Compl. ¶21.  Each of these programs was supposed to provide safety of principal and same-day liquidity and was to be segregated from Sentinel's own funds.  Est. Compl. ¶17, 22; Crd. Compl. ¶21, 26.

### B.     First Horizon Sells Sentinel PreTSLs, a Risky, Highly Illiquid and Unsuitable Collateralized Debt Obligation.

The Trustee Lawsuits alleged the First Horizon issued and sold to Sentinel hundreds of millions of dollars of structured investment products, specifically, certain collateralized debt obligations known as "Preferred Term Securities Limited," or "PreTSLs" (pronounced "pretzels").  Est. Compl. ¶¶3, 23-25; Crd. Compl. ¶¶3, 28-30.  Each PreTSL had multiple series

---

[2] The Second Amended Complaint in the Estate Action ("Est. Compl.") and the Third Amended Complaint in the Creditor Action ("Crd. Compl.") are attached to Plaintiffs' First Amended Complaint as Exhibits F and G, respectively (*Doc. Nos. 6-6 and 6-7*).

of notes, each of which has specified interest rate and different priority position.  Est. Compl. ¶¶24, 26; Crd. Compl. ¶¶29, 31.  PreTSL notes did not mature for 30 years, and the secondary market was limited.  Est. Compl. ¶27; Crd. Compl. ¶32.  The Trustee alleged that First Horizon knew PreTSLs were wholly unsuitable for Sentinel and its customer portfolios because they were risky, illiquid securities with limited secondary markets and many did not qualify as investment-grade securities.  Est. Compl. ¶¶3-4, 24, 28, 35-39; Crd. Compl. ¶3-4, 32-34.

C. **Trustee Alleges That First Horizon Bribed and Duped Sentinel Into Purchasing PreTSLs, Causing Sentinel's Insolvency.**

The Trustee alleged that First Horizon sold PreTSLs to Sentinel utilizing two corrupt and deceptive methods: (1) by compromising and bribing Sentinel's head trader by providing him with numerous visits to strip clubs, lavish meals, travel, tickets to sporting events, and other benefits; and (2) by providing Sentinel with false and misleading information about the risk and liquidity of the PreTSLs, First Horizon's ability and willingness to make a market in these securities, and the ratings of these securities.  Est. Compl. ¶¶4, *passim*; Crd. Compl. ¶¶5, *passim*. According to the Trustee, Sentinel had entered into numerous repurchase ("repo") agreements in which it used its PreTSLs as collateral.  Beginning in late June 2007, Sentinel's repo counterparties began returning the PreTSLs to Sentinel.  Est. Compl. ¶¶157, 158; Crd. Compl. ¶¶189, 190.  Sentinel needed to come up with cash quickly to pay the repo counterparties and tried to sell the PreTSLs to First Horizon.  First Horizon, however, was only able or willing to buy back a small portion of the total number of PreTSLs that Sentinel needed to sell.  Est. Compl. ¶¶159, 160; Crd. Compl. ¶¶191, 192.  This caused a liquidity crisis at Sentinel, and, in August 2007, Sentinel could not honor its customers' requests to redeem their investments.  Est. Compl. ¶¶169, 173; Crd. Compl. ¶¶201, 205.  Soon thereafter, Sentinel filed its bankruptcy petition.  Est. Compl. ¶175; Crd. Compl. ¶207.

5

The Trustee alleged that First Horizon participated in this conduct to earn income, commissions, compensation and profits associated with the sale of the securities.  Est. Compl. ¶5; Crd. Compl. ¶6.  The Trustee further alleged that, as a result of the illiquid and risky PreTSLs Sentinel purchased from First Horizon, and the huge debt that Sentinel incurred to finance these purchases, Sentinel collapsed when it turned out the PreTSLs were worth only a fraction of their face value, and some worth nothing at all.  Est. Compl. ¶6; Crd. Compl. ¶7.

**ARGUMENT**

## I.   <u>LEGAL STANDARD.</u>

On a Rule 12(c) motion, as under Rule 12(b)(6), the Court must construe the contested pleading in the light most favorable to the nonmoving party and determine whether the nonmoving party can prove no set of facts in support of the claims that would entitle him to relief.  *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999).  "In considering a motion by the plaintiff for a judgment on the pleadings, the question for determination is whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law.  Or, to put it another way, the question is whether the facts alleged in the answer are material in the sense that, if proved, they will constitute a legal defense to the plaintiff's claim."  *Air Eng'g Metal Trades Council & Affiliated Unions, AFL-CIO v. Aro, Inc.*, 307 F.Supp. 934, 935-36 (E.D. Tenn. 1969) (citation omitted); *see also Starnes Family Office, LLC v. McCullar,* Nos. 10-2186, 11-2262, 2011 WL 38623333, at *4 (W.D. Tenn. Sept. 1, 2011).

In deciding a motion for judgment on the pleadings, the court may consider all available pleadings, as well as: "(1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred

to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Starnes Family Office*, 2011 WL 38623333, at *5 (citations omitted).

## II.     APPLICABLE PRINCIPLES OF POLICY INTERPRETATION.

Under Tennessee law, the interpretation of an insurance contract is a matter of law for determination by the court. *Yarnell v. Transam. Life Ins. Co.*, 694 F. Supp. 2d 857, 862 (E.D. Tenn. 2010), *citing Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992). The court must construe insurance policies in the same manner as any other contract and give effect to the parties' intentions as reflected in the written contract of insurance. *See McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990); *Harrell v. Minn. Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996). "A primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract." *Sumner Cnty. Bd. of Educ. v. Carden Co.*, No. M2005-2670-COA-R3-CV, 2006 WL 2069413, at *1-2 (Tenn. Ct. App. July 25, 2006) (citations omitted). Accordingly, when the provisions of an insurance policy are clear and unambiguous, the court's construction of the policy should favor neither party, and should avoid extending coverage beyond the policy's intended scope. *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 20 (Tenn. Ct. App. 2002).

An insurance policy should be construed fairly and reasonably, and the terms of the policy should be taken and understood in their plain, ordinary, and popular sense. *See id.; Swanson v. Mid-South Title Ins. Corp.*, 692 S.W.2d 415, 419 (Tenn. Ct. App. 1984). The court, in determining the parties' intention, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. *See Rainey*, 836 S.W.2d at 119 (citations omitted). A court is not to

make a new contract for the parties or to disregard the express language, to create an ambiguity where none exists, or to refine away terms expressed with sufficient clearness, but to enforce the parties' unambiguous contract as written. *Swanson*, 692 S.W.2d at 419 (citations omitted); *Sumner Cnty. Bd. of Educ.*, 2006 WL 2069413, at *2. Thus, if a contract is clear and unambiguous, its literal meaning controls. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002).

## III.    COVERAGE IS BARRED BY THE INSOLVENCY EXCLUSION.

Subject to the proviso discussed below, the Insolvency Exclusion bars coverage for any claim "alleging, arising out of, based upon or attributable to the bankruptcy, insolvency . . . or liquidation of . . . **any** broker or dealer in securities or commodities, or **any** . . . investment company . . . or **any Insured**." Primary Policy at 71 (emphasis added). By these terms, the exclusion applies to any claim that (1) alleges, arises out of, based upon or attributable to (2) the insolvency, bankruptcy or liquidation of (3) **any** of the enumerated entities, including **any** broker or dealer in securities or commodities or **any** investment company.

### A.    The Trustee Lawsuits Arise out of Sentinel's Bankruptcy and Insolvency.

The first two prongs of the Insolvency Exclusion turn on whether the Trustee Lawsuits against First Horizon present a claim "alleging, arising out of, based upon or attributable to the bankruptcy, insolvency . . . or liquidation of" Sentinel. The phrase "arising out of" is interpreted "broadly rather than narrowly" under Tennessee law. *City of Lewisburg v. Nutmeg Ins. Co.*, No. 01A01-9511-CH-00499, 1996 WL 411632, at *3 (Tenn. Ct. App. July 24, 1996); *see also Travelers Ins. Co. v. Aetna Ca. & Surety Co.*, 491 S.W.2d 363, 365 (Tenn. 1973) (phrase "arising out of" has been interpreted to mean "originating from," "having origin in," "growing out," or "flowing from") (citations omitted).

Here, the Trustee's allegations directly tie Sentinel's claims against First Horizon to Sentinel's insolvency.  The Trustee Lawsuits allege that Sentinel was insolvent because it "collapsed under the weight of the illiquid and risky" PreTSLs it purchased that turned out to be worth "only a fraction of their face value" and "the huge debt it had incurred to finance the purchase of [the PreTSLs]."   Est. Compl. ¶6; Crd. Compl. ¶7.  Sentinel was unable to honor customer redemptions and was otherwise unable to meet its liabilities to its customers.  Est. Compl. ¶173; Crd. Compl. ¶¶7, 205.  Sentinel was rendered insolvent and filed for bankruptcy. Est. Compl. ¶¶9, 175; Crd. Compl. ¶¶11-12, 207.  Absent Sentinel's collapse and insolvency due to the illiquidity and diminished value of the PreTSLs, the Liquidation Trustee would not have been appointed and the Trustee Lawsuits would not have been asserted against First Horizon. The Trustee Lawsuits therefore arise out of, originate from, or flow from Sentinel's insolvency and bankruptcy.  *See, e.g., Assoc. Comm. Bancorp*, *Inc. v. Travelers Cos., Inc.*, No. 3:0-CV-1357, 2010 WL 1416842, at *4, 9 (D. Conn. Apr. 8, 2010), *aff'd* 421 Fed. App'x 125, 2011 WL 1781908 (2d Cir. 2011) (investors' claims against insured arose out of Madoff's insolvency and bankruptcy because, had Madoff not become insolvent, bankrupt, and lost the investors' money, the investors would have had no damage and thus no reason to file suit against the insured).[3]

### B.    Sentinel Is an Entity Whose Insolvency Triggers the Insolvency Exclusion.

First Horizon purports to reserve the right to contest that Sentinel is an investment

---

[3] *See also Smith v. Cont'l Cas. Co.*, No. 07-CV-1214, 2008 WL 4462120, at *12 (M.D. Pa. Sept. 30, 2008), *aff'd on other grounds*, 347 Fed. App'x 812 (3d Cir. 2009) (claims against insured "arose out of" insolvency of company because, absent the company's bankruptcy and inability to pay, claimants would not have filed suit); *Transam. Ins. Co. v. South*, 975 F.2d 321, 328 (7th Cir. 1992) (claim "arose out of" the insolvency of the company in which the insured invested his clients' funds because, had the company been solvent, the clients would have suffered no injury, and thus was barred by insolvency exclusion); *Transam. Ins. Co. v. Snell*, 627 So. 2d 1275, 1276 (Fla. Dist. Ct. App. 1993); *Barron v. Scaife*, 535 So. 2d 830, 832 (La. Ct. App. 1988); *St. Paul Fire & Marine Ins. Co. v. Cohen-Walker, Inc.*, 320 S.E.2d 385, 388 (Ga. Ct. App. 1984).

company or a broker and dealer of commodities and boldly asserts that the Insurers will never be able to prove that Sentinel is either. *See* Pls.' Memorandum of Law in Support of Their Motion for Partial Judgment on the Pleadings (*Doc. No. 101-1*) ("Mem.") at 10, 10 n.8. While the Insurers likewise reserve the right to address this issue more fully, to the extent necessary, they note that matters of which the Court may take judicial notice show that Sentinel is both an investment company and a broker or dealer in commodities.

First, Sentinel was registered with the SEC as an investment adviser. Est. Compl. ¶10; Crd. Compl. ¶19; *In re Sentinel Mgmt. Grp.*, 398 B.R. at 288-89. As the Bankruptcy Court in the *Sentinel* bankruptcy proceeding explained, "Sentinel's day-to-day operations involved the management of cash investments for numerous clients . . . ." *In re Sentinel Mgmt. Grp.*, 398 B.R. at 289. As the Federal District Court overseeing that proceeding added, "Sentinel's investors could select a particular portfolio in which to invest, though Sentinel maintained the sole discretion to purchase or sell securities in each portfolio." *SEC v. Sentinel Mgmt. Grp., Inc.*, No. 07 C 4684, 2012 WL 1079961, at *1 (N.D. Ill. March 30, 2012).

Although the term "investment company" is undefined in the Primary Policy, Tennessee courts often look to dictionaries to determine the ordinary meaning of the terms in an insurance contract. *See Ky. Nat. Ins. Co. v. Lawrence,* 187 Fed. App'x 423, 425 (6th Cir. 2006). Black's Law Dictionary defines "investment company" to mean "[a] company formed to acquire and manage a portfolio of diverse assets by investing money collected from different sources." Black's Law Dictionary 298 (8th ed. 2004). As described above, Sentinel's business was to acquire and manage portfolios of diverse assets on behalf of their clients. Sentinel was therefore an "investment company" as that term is understood in its ordinary and popular sense. *See Lawrence,* 187 Fed. App'x at 425.

Second, Sentinel was registered as a futures commission merchant, or FCM, with the CFTC.  Est. Compl. ¶10; Crd. Compl. ¶19; *In re Sentinel Mgmt. Grp.*, 398 B.R. at 288-89.  "A FCM is a ***broker*** that trades futures contracts for customers who open an account with the FCM[.]"  *In re Sentinel Mgmt. Grp.*, 398 B.R. at 289 n.4 (emphasis added); *see also First Am. Discount v. CFTC*, 222 F.3d 1008, 1010 (D.C. Cir. 2000) ("An FCM is the commodity market's equivalent of a securities brokerage house, soliciting and accepting orders for futures contracts and accepting funds or extending credit in connection therewith."); 11 U.S.C. § 101(6) ("The term 'commodity broker' means futures commission merchant. . . .").

Thus, Sentinel was an entity whose insolvency triggers the Insolvency Exclusion.

## IV.   FIRST HORIZON'S INTERPRETATION OF THE INSOLVENCY EXCLUSION IS UNREASONABLE, RUNS AFOUL OF THE APPLICABLE RULES OF CONSTRUCTION, AND FINDS NO SUPPORT IN EXISTING CASE LAW.

### A.   The Limitation that First Horizon Grafts on to the Insolvency Exclusion Is Inconsistent with the Plain Language of the Policy.

Although First Horizon asserts that the plain language of the Insolvency Exclusion does not apply to the Trustee Lawsuits, their argument is unmoored from the plain language of the exclusion, which broadly and plainly states that it applies to claims alleging or arising out of the bankruptcy of "***any*** broker or dealer in securities or commodities" or "***any*** . . . investment company."  *See* Primary Policy at 71 (emphasis added).  The word "any" is a purposely broad term that is interpreted to be "all inclusive."  *Wright-Miller v. Miller*, 984 S.W.2d 936, 943 (Tenn. App. 1998); *see also Roddy Mfg. Co. v. Olsen*, 661 S.W.2d 868, 871 (Tenn. 1983) ("It is axiomatic that 'any' is synonymous with 'all.'").  Nowhere in support of its Motion does First Horizon explain how the repeated use of the word "any" in the exclusion can be squared with its contention that the exclusion applies only to a sub-set of "any"—*i.e.*, non-customer entities.  It cannot be.

11

First Horizon's proposed interpretation would require the Court either (1) to ignore the fact that the policy says it applies to "any" investment company and "any" broker; or (2) to insert words that do not appear in the policy.  For the Court to make either of these changes would violate Tennessee's rules of contract construction.   On the latter point, First Horizon's interpretation would have the court add words to the Insolvency Exclusion to exclude any claim arising out of the insolvency of any broker or dealer or any investment company, ***except those broker, dealers and investment companies that are the customer or client of an Insured***.[4]  The actual Insolvency Exclusion contains no such limitations, and to enforce any interpretation other than that which is expressly written in the policy violates fundamental principles of Tennessee law.  *See Thompson v. Am. Gen. Life & Accident Ins. Co.*, 448 F. Supp. 2d 885, 889 (M.D. Tenn. 2006) ("The Court cannot create a contract term that does not exist.").   Accordingly, First Horizon's invitation that the Court rewrite the Insolvency Exclusion must be declined.[5]

First Horizon's resort to the assertion that the Insurers could have drafted an exclusion with specific reference to "claims for wrongful acts brought by or on behalf of customers or clients in bankruptcy" also misses the mark.  *See* Mem. at 11.  The fact that First Horizon can think of other ways (which are more complicated and involve many more words) to get to the same result as the actual words of the Insolvency Exclusion proves nothing and is irrelevant to the issue before the Court.  *See Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669,

---

[4] A chart juxtaposing the actual Insolvency Exclusion and First Horizon's hypothetical exclusion is attached as Exhibit A.

[5] First Horizon's argument that the Insolvency Exclusion is triggered only by the insolvencies of non-customers also ignores the language in the Insolvency Exclusion that provides that the exclusion will apply to claims arising out of the bankruptcy or insolvency of "any Insured."  *See* Primary Policy at 71.  This subcategory of enumerated entities on its face includes entities that are not non-customer "third parties" with respect to the Insured and cannot be reconciled with First Horizon's interpretation.  *See Southeast Mental Health Ctr., Inc. v. Pac. Ins. Co., Ltd.*, 439 F. Supp. 2d 831, 835 (W.D. Tenn. 2006) ("the contract should be read as a whole and each word given its appropriate meaning").

12

679 (6th Cir. 2011) (Ohio law) ("We may not ponder whether the insurance companies (or we) could have drafted more precise language; we only consider whether Appellants have offered a reasonable alternative interpretation.").

Accordingly, in accordance with Tennessee law and basic principles of contract interpretation, the plain language of the Policies should be enforced as written, and the Court should reject as a matter of law First Horizon's unreasonable interpretation of the Insolvency Exclusion. *Planters Gin*, 78 S.W.3d at 890 (literal meaning of clear and unambiguous language controls); *Swanson*, 692 S.W.2d at 419 ("contract must be interpreted and enforced as written").

    **B.**    <u>**First Horizon's Alleged Expectations of Coverage Do Not Alter The Parties'**</u>
<u>**Intent as Embodied in the Primary Policy.**</u>

First Horizon also suggests that its "reasonable expectations" should somehow result in the Court rewriting the Insolvency Exclusion. *See* Mem. at 13. But, even under the "reasonable expectations doctrine," the insured's expectation must be "*reasonable*." *Thompson*, 448 F. Supp. 2d at 889 (emphasis in original). Given the plain language of the Insolvency Exclusion, First Horizon—a sophisticated financial institution represented by a sophisticated insurance broker— cannot credibly assert that its rewriting of the Insolvency Exclusion is reasonable. *See Certain Underwriters at Lloyd's, London v. Alkabsh*, No. 09-2711, 2011 WL 938407, at *9 (W.D. Tenn. March 15, 2011) (Mays, J.) (insured is conclusively presumed to have knowledge of, and to have assented to, all the terms, conditions, limitations, provisions or recitals in the policy).[6]

The only evidence of First Horizon's expectations of coverage is the wording of the

---

[6] The Primary Policy was drafted on the letterhead of First Horizon's broker, Marsh, and the Insurers believe that discovery will show that Marsh drafted the policy. Courts have held the reasonable expectations doctrine to be inapplicable under such circumstances. *See MDL Capital Mgmt., Inc. v. Federal Ins. Co.*, Nos. 05cv1396, 06cv03899, 2006 WL 2974165, at *9 (W.D. Pa. Oct. 16, 2006) (refusing to apply reasonable expectations doctrine because insured was sophisticated who used a broker to purchase insurance policies), *rev'd on other grounds,* 274 Fed. App'x 169 (3d Cir. 2008).

policy itself, and where the terms of a contract are clear and unambiguous, the Court should look to the contract alone to ascertain the parties' intent.  *See Kiser v. Wolfe*, 353 S.W.3d 741, 747-48 (Tenn. 2011) ("[w]hen construing a contract, the paramount rule . . . is to ascertain the intent of the parties . . . [which] is to be derived from the four corners of the policy giving effect to all parts"; "when the language is clear, courts must not look beyond the four corners of the instrument") (alterations in original); *Thompson*, 448 F. Supp. 2d at 889.  The plain language of the Insolvency Exclusion states that it applies to claims alleging, arising out of, based upon or attributable to the insolvency of "any" investment company or "any" broker or dealer in securities.  It could not be reasonable for First Horizon to expect that "any" means something less than "any."  *See Kiser*, 353 S.W.3d at 747-48; *Thompson*, 448 F. Supp. 2d at 889.

Nor does the exclusion somehow render coverage "illusory," as First Horizon suggests. *See* Mem. at 13; *see also C.T.S.C. Boston, Inc. v. Cont'l Ins. Co.*, 25 Fed. App'x 320, 2001 WL 1667279, at *6 n.5 (6th Cir. 2001) (Michigan law) ("Nor does the fact that an exclusion applies in a particular instance render the whole insurance policy illusory.").  The Policies plainly afford coverage for numerous claims arising out of the professional services provided by First Horizon. And, even with respect to customer claims that arise out of insolvency, the Insolvency Exclusion applies only in limited circumstances involving the insolvency of certain types of entities, including investment companies and brokers and dealers.  So, for example, a claim arising out of the insolvency of a car dealership customer, or pharmaceutical company customer, of First Horizon would not implicate the Insolvency Exclusion.  That the Trustee Lawsuits fall within the plain language of the Insolvency Exclusion does not render the Policies illusory.

**C.**      **The Exception to the Insolvency Exclusion Provides No Support to First Horizon's Attempt to Rewrite the Insolvency Exclusion.**

The Insolvency Exclusion provides a narrow exception to the application of the

Insolvency Exclusion, pursuant to which a small, readily-identifiable subset of claims are deemed not to be excluded. The exclusion will not apply to "**Wrongful Acts** solely in connection with an **Insured's** investment on behalf of the claimant in the stock of any of the foregoing entities." Primary Policy at 71. First Horizon does not contend that the exception is implicated here. And it is not. There is no allegation in the Trustee Lawsuits that First Horizon invested on behalf of Sentinel in the "stock" of any identified entity. *See Assoc. Comm. Bancorp*, 421 Fed. App'x at 127 ("The carveback relates to investments in an investment company's 'stock'—that is, in its equity."). Instead, First Horizon asserts that the presence of the exception forecloses somehow the application of the exclusion to claims arising out of the insolvency of its customers. That contention has no merit.

By its terms, the Insolvency Exclusion does not apply to "Wrongful Acts solely in connection with an Insured's investment on behalf of the claimant in the stock of any of the foregoing entities." So, for example, the exception would kick in and restore coverage for a claim brought against First Horizon by one of its customers, say a wealthy individual, on whose behalf First Horizon invested in the stock of Sentinel. The wealthy individual customer of First Horizon then sues First Horizon for investing his or her funds in the stock of Sentinel, which lost all of its value because of Sentinel's insolvency. In that example, the Insolvency Exclusion would not apply to the claim brought by the individual against First Horizon even though his or her loss arose out of the insolvency of Sentinel, which is an investment company and commodity broker. The fact that Sentinel is also a customer of First Horizon is completely irrelevant to both the initial triggering of the exclusion and to the triggering of the exception to the exclusion. On its plain terms, the Insolvency Exclusion bars coverage for loss alleging or arising out of the insolvency of certain types of entities, irrespective of whether they are customers of First

Horizon.  And, nothing about the exception to the exclusion is inconsistent with that result.  *Cf.*

*Columbia Cas. Co. v. Ga. & Fla. Railnet, Inc.*, 542 F.3d 106, 112 (5th Cir. 2008) ("[A]n

exclusion cannot create coverage that would not otherwise exist under a policy") (quoting *United*

*Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445. 452-54 (5th Cir. 2007)); *Sony Computer Entm't*

*Am., Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1017 (9th Cir. 2008) (holding that an

exclusion "cannot establish coverage that does not exist under the affirmative coverage

provisions").

> **D.     First Horizon's References To Positions of Insurers in Other Cases Involving Other Policies Are Misleading and Do Not Support First Horizon's Interpretation.**

First Horizon also asserts that its interpretation of the Insolvency Exclusion is

"consistent" with how other insurers have "asked courts to interpret" similar exclusions in other

cases.  *See* Mem. at 15, 17-20.  First Horizon's citations to certain briefs in *Associated*

*Community Bancorp* and *Aspen Ins. UK, Ltd. v. Fiserv, Inc.*, No. 1:09-cv-02770-CMA-CBS (D.

Colo.) ("*Fiserv*") misleadingly suggest the insurers expressly argued for a non-customer third-

party limitation and that the Insurers have taken a contradictory position here.  *See* Mem. at 18-

20.[7]  This is not the case.  The briefs by the insurers in *Fiserv* and *Associated Community*

*Bancorp* involved different parties, different facts, and completely different issues involving the

insolvency exclusions that were applicable specifically to these cases.

The *Fiserv* case involved the multi-billion dollar Ponzi scheme led by Bernard Madoff

("Madoff") and his securities brokerage firm, Bernard L. Madoff Investment Securities, LLC

---

[7] Exhibits A, C, and D to First Horizon's Memorandum are summary judgment briefs filed in *Fiserv*.  The court's order addressing these cross-motions did not address the interpretation of the insolvency exclusion, and *Fiserv* settled before the court issued an opinion interpreting the language of the insolvency exclusion.  *See Fiserv*, No. 1:09-cv-02770-CMA-CBS (D. Colo.) (*Doc. Nos. 66 & 108*)  (order on cross-motions attached hereto as Exhibit B and order dismissing action attached hereto as Exhibit C).

("BLMIS"), which was forced into liquidation.  The insurance companies in the *Fiserv* case denied coverage based on the insolvency exclusion.  It just so happened that BLMIS, the company in liquidation, was a third-party broker/dealer.  Indeed, the "**only issue before the Court is whether the Madoff Actions 'arise out of' the bankruptcy or suspension of payments by BLMIS**."  Exhibit A to Pls.' Mem. at 14 (emphasis added).[8]  The insertion of the phrase "third-party" is simply descriptive and has no bearing on the issues litigated in *Fiserv* or *Associated Community Bancorp*.[9]

Tellingly, First Horizon does not assert that the insurers have ever taken the position or asserted that an exclusion worded like the Insolvency Exclusion does not apply to the factual scenario presented here.  What First Horizon has done is taken language from unrelated cases out of context and added emphasis where none previously existed.

The fact insurers in other cases **applied** the insolvency exclusion to situations where the insolvent entity was not the insured's customer, does not mean that the insolvency exclusion is somehow **limited** to those situations.  *See Assoc. Comm. Bancorp.*, 2010 WL 1416842, at *1 (involving investors' claims against insured arising out of insured's placement of investors' funds with Madoff and investors' Madoff-related losses); *Fiserv*, No. 1:09-cv-02770-CMA-CBS (D. Colo.) (same).  The point of using the word "any" is to ensure that the Insolvency Exclusion applies **regardless** of whether the insolvent entity is a customer.

---

[8]  In the litigation, the *Fiserv* Defendants admitted that BLMIS was a "broker or dealer in securities" and that a trustee had been appointed to liquidate the business.  Exhibit A to Pls.' Mem. at 13.

[9]  The insurers did not use the phrase "third party" to argue for the limitation sought by First Horizon.  *See, e.g.*, Exhibit A to Pls.' Mem. at 13 (application of exclusion turns on whether claim (i) arises out of (ii) the bankruptcy of (iii) a broker or dealer in securities); Exhibit B to Pls. Mem. at 41 ("Insolvency Exclusion expressly and unambiguously applies to '*any* Claim' . . . arising out of the insolvency . . . of any investment company or broker-dealer") (emphasis in original).

**E.      First Horizon's Unwritten Limitation to the Insolvency Exclusion Is Not Supported By Case Law.**

The cases First Horizon cites do not show that *this* exclusion is limited to the insolvency of a non-customer.  They show that when other policies are written differently from this one, they may apply differently.

First Horizon relies on cases involving insolvency exclusions contained in insurance brokers and life insurance/financial institution E&O professional liability policies where the exclusions at issue were significantly different from the Insolvency Exclusion.  *See* Mem. at 16 n.9 & n.10.  For example, in the insurance broker cases, the insolvency exclusions expressly limited their application to claims arising out of a third-party insurance company's insolvency or financial inability to pay.[10]  In each of the financial institution cases First Horizon cites, the exclusions at issue in those cases were expressly limited to the insolvency or inability to pay of entities or investments in which the insured placed its client.[11]

---

[10]   *See Am. Auto. Ins. Co. v. Valentine*, 131 F. App'x 406, 409 (4th Cir. 2005) (insolvency exclusion barred coverage for claims arising "out of the insolvency . . . of an organization in which the INSURED has . . . placed or obtained coverage); *Snell*, 627 So. 2d at 1276 (same); *Emp'rs Ins. of Wausau v. Tri World Ins. Agency, Inc.*, 134 F.3d 377, 1998 WL 23677, at *2 (9th Cir. 1998) (insolvency exclusion excluded "any claims resulting from the insolvency or bankruptcy of insurance companies, self-insurance trusts, group insurance trusts or other risk-assuming entities"); *Greenwood Ins. Grp., Inc. v. U.S. Liab. Ins. Co.*, 157 S.W.3d 444, 448-449 (Tex. App. 1998) (policy excluded coverage for any claim arising out of placement of a risk or an insurance policy with any insurance company or other risk assuming entity that becomes insolvent or bankrupt); *Kleinec v. White Marine Lake Corp.*, 533 N.Y.S.2d 909, 910 (N.Y. App. Div. 1988)  (policy excluded coverage for "any claim arising out of or in connection with the financial inability to pay, insolvency, receivership, bankruptcy or liquidation of any insurer); *Barron v. Scaife*, 535 So. 2d 830, 832 (policy excluded coverage for any claims "[a]rising from or related to . . . the insolvency, receivership, bankruptcy or liquidation of any insurance company."); *Cohen-Walker, Inc.*, 320 S.E.2d at 387 (policy excluded coverage for "claims resulting from the inability of an insurance company to pay its debts [including] claims related to an insurance company involved in receivership or liquidation proceedings.").

[11]   *See Smith*, 2008 WL 4462120, at *6 (policy did not apply to any "Claim arising out of insolvency, receivership, bankruptcy or inability to pay of any organization in which the Insured has, directly or indirectly, placed or obtained coverage or in which an Insured has, directly or

Indeed, the fact that the policies in these cases contained language missing from the Insolvency Exclusion in First Horizon's policy does not support First Horizon's Motion; it belies the Motion.  Unlike in those cases, the Insolvency Exclusion does not define the triggering insolvent entity by reference to entities in which the insured, for example, placed coverage for its client or invested funds on behalf of its client.  Accordingly, the Insolvency Exclusion here *should* work differently.[12]

Nor is there anything inherent in the idea of an insolvency exclusion that requires a court to pretend that the exclusion is limited to non-customers even when it does not purport to be.  To the contrary, in *Zurich Specialties London Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*, 650 F. Supp. 2d 1064, 1071 (C.D. Ca. 2009), *aff'd* 425 Fed. App'x 554 (9th Cir. 2011), the court applied an insolvency exclusion, as written, to the insolvency of a customer.  In *Bickerstaff*, the insurer issued a professional liability policy to an actuarial services company that "unambiguously" excluded coverage for claims "arising out of . . . the insolvency or bankruptcy of the Insured or any other person, firm or organization."  425 Fed. App'x at 554.  The underlying action arose from the insolvency of a medical malpractice self-insurance fund, for

---

indirectly, placed the funds of a client or account"); *South*, 975 F.2d at 323 (policy excluded coverage for "any claim arising out of insolvency, receivership or bankruptcy of any organization (directly or indirectly) in which the Insured has placed or obtained coverage or in which an Insured has placed the funds of a client or account"); *Wright v. Employers Reins. Corp.*, No. C 04-03710 JW, 2005 WL 756618, at *5 (N.D. Cal. Mar. 31, 2005) (policy excluded coverage of "any claim arising out of or in connection with the insolvency . . . of any entity or investment vehicle in which any customer has invested"); *Am. Auto Ins. Co. v. Mayfield*, 287 F. Supp. 2d 661, 666 (N.D. Tex. 2003) (policy excluded coverage for "[a]ny claim arising out of the . . . receivership . . . or financial inability to pay of an organization . . . in which the INSURED has (directly or indirectly) placed the funds of a client or account or in which any person has invested as a result of consultation with an INSURED").

[12]  While not directly relevant to the limited issue put before the Court in First Horizon's Motion, courts in many jurisdictions have held insolvency exclusions to be clear and unambiguous.  *See Assoc. Comm. Bancorp*, 2010 WL 1416842, at *10; *South*, 975 F.2d at 329 (holding insurer had no duty to defend insured under unambiguous insolvency exclusion); *Valentine*, 131 F. App'x at 409 (same); *Kleneic*, 533 N.Y.S.2d at 910 (same); *Barron*, 535 So. 2d at 832 (same).

19

which the insured performed rate level studies and reserve analyses. *See* 650 F. Supp. 2d at 1067. The fund, the insured's client, declared insolvency, and the receiver initially sued the fund's accountant. *See id.* The accountant in turn sued the insured for contribution and alleged that the insured's professional services had caused the fund's insolvency. *See id.* Both the District Court and Ninth Circuit held that the underlying action fell squarely under the terms of the insolvency exclusion. *See id.* at 1070-73; 425 Fed. App'x at 556.

In sum, none of authority cited by First Horizon actually supports its effort to have the Court rewrite the Insolvency Exclusion here.

## CONCLUSION

For the foregoing reasons, the Insurers respectfully request that Plaintiffs' Motion for Partial Judgment on the Pleadings be denied.

Dated:  May 2, 2013                                  Respectfully Submitted,


LEITNER, WILLIAMS, DOOLEY &          WILFORD CONRAD LLP, BY
NAPOLITAN, PLLC, BY

 _/s/ Nicole M. Grida_____           _/s/ Christopher T. Conrad_____
RONALD L. HARPER, Tennessee BPR          DAVID A. WILFORD, admitted *pro hac vice*
#15470                                                           CHRISTOPHER T. CONRAD,
NICOLE M. GRIDA, Tennessee BPR #25416     admitted *pro hac vice*
Brinkley Plaza                                              JENNIFER R. BERGSTROM, admitted *pro*
80 Monroe Avenue, Suite 800                      *hac vice*
Memphis, Tennessee  38103                         Flint Creek Corporate View
(901) 527-0214                                            760 W. Main Street, Suite 210
ron.harper@leitnerfirm.com                        Barrington, Illinois 60010
nicole.grida@leitnerfirm.com                       (224) 848-4721
                                                                    dwilford@wilfordconrad.com
                                                                    cconrad@wilfordconrad.com
                                                                    jbergstrom@wilfordconrad.com

*Counsel for Defendants Certain Underwriters at Lloyd's and Aspen Insurance UK Limited*

FARRIS BOBANGO PLC, BY:

  /s/ Robert F. Miller         
ROBERT F. MILLER, Tennessee BPR #7797
999 S. Shady Grove Road, Suite 500
Memphis, Tennessee  38120
(901) 259-7100
rfmiller@farris-law.com

WILEY REIN LLP, BY:

  /s/ William E. Smith        
WILLIAM E. SMITH, admitted *pro hac vice*
MARY CATHERINE MARTIN,
  admitted *pro hac vice*
1776 K Street NW
Washington, DC  20006
(202) 719-7000
wsmith@wileyrein.com
mmartin@wileyrein.com

*Counsel for Defendant U.S. Specialty Insurance Company*

THOMASON, HENDRIX, HARVEY,
  JOHNSON & MITCHELL, PLLC, BY:

  /s/ William H. Haltom, Jr.      
WILLIAM H. HALTOM, JR.,
  Tennessee BPR #6361
JUSTIN JOY, Tennessee BPR #023722
2900 Once Commerce Square
40 South Main Street
Memphis, Tennessee  38103
(901) 525-8721
haltomw@thomasonlaw.com
joyj@thomasonlaw.com

TROUTMAN SANDERS, LLP, BY

  /s/ Merril Hirsh        
MERRIL HIRSH, admitted *pro hac vice*
CLARENCE Y. LEE, admitted *pro hac vice*
RICHARD C. AMBROW,
  admitted *pro hac vice*
401 9th St., N.W., Suite 1000
Washington, D.C. 20004
(202) 662-2032
merril.hirsh@troutmansanders.com
clarence.lee@troutmansanders.com
richard.ambrow@troutmansanders.com

*Counsel for Defendant Federal Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

     I, Christopher T. Conrad, an attorney, hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/EFC system on May 2, 2013, which will send electronic notification of such filing to all counsel of record.

/s/ Christopher T. Conrad    
CHRISTOPHER T. CONRAD