# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **FIRST HORIZON NATIONAL CORPORATION, FTN FINANCIAL SECURITIES CORP., and FIRST TENNESSEE BANK NATIONAL ASSOCIATION,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 2:11-cv-02608** |
| **CERTAIN UNDERWRITERS AT LLOYD'S,** Specifically Syndicate Nos. 2987 BRT and 2488 AGM, Subscribing to Policy Nos. QA051908/1 and QA052008/1, **and** ) | **JURY TRIAL DEMANDED** |
| **ASPEN INSURANCE UK LIMITED,** Subscribing to Policy Nos. QA051908/1 and QA052008/1, ) | |
| **U.S. SPECIALTY INSURANCE COMPANY, and** ) | |
| **FEDERAL INSURANCE COMPANY,** ) | |
| **Defendants.** ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Thomas Lang Wiseman
Christopher Lynn Patterson
WISEMAN BRAY PLLC
1665 Bonnie Lane, Suite 106
Memphis, TN 38016

Anthony P. Tatum
Shelby S. Guilbert
Michael B. Wakefield
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA  30309

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

I.  First Horizon Has Offered the Only Reasonable
    Interpretation of the Insolvency Exclusion. ................................................................. 2

    A.  The Plain Language of the Exclusion Confirms
        That the Insurers' Interpretation Is Unreasonable. .......................................... 3

    B.  The Insurers' Interpretation Leads to Absurd Results. ...................................... 5

    C.  The Carveback Confirms That Because Sentinel Is
        the "Claimant," It Is Not One of the Entities
        Enumerated in the Exclusion. ........................................................................ 6

II. Case Law and the Insurers' Own Statements Confirm
    That First Horizon's Interpretation Is Correct. ...................................................... 8

    A.  The Insurers Cannot Square Their New Interpretation
        of the Insolvency Exclusion With Their Prior
        Statements Regarding Its Purpose. ................................................................. 8

    B.  The Insurers' Reliance on *Bickerstaff* Is Misplaced. ....................................... 9

III. Conclusion ............................................................................................................ 10

# TABLE OF CASES

**Page(s)**

*Blaine Constr. Corp. v. Ins. Co. of N. Am.*,
    171 F.3d 343 (6th Cir. 1999) ..................................................................3

*D & E Constr. Co. v. Robert J. Denley Co.*,
    38 S.W.3d 513 (Tenn. 2001)....................................................................4

*Erie Ins. Exch. v. Columbia Nat'l Ins. Co.*,
    2013 WL 395982 (Tenn. App. Jan. 30, 2013) ....................................3, 4

*Forrest Constr., Inc. v. Cincinnati Ins. Co.*,
    703 F.3d 359 (6th Cir. 2013) ...........................................................3, 4, 6, 7

*HCA, Inc. v. Am. Protection Ins. Co.*,
    174 S.W.3d 184 (Tenn. Ct. App. 2005)...............................................5, 6

*Standard Constr. Co., Inc. v. Md. Cas. Co.*,
    2002 WL 1477886 (W.D. Tenn. May 15, 2002) ..................................3, 4

*Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*,
    491 S.W.2d 363 (Tenn. 1973).....................................................................3

*Zurich Specialties London Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*,
    650 F. Supp. 2d 1064 (C.D. Ca. 2009) ...............................................9, 10

The Insurers contend that the Insolvency Exclusion bars coverage for E&O claims brought against First Horizon by a bankrupt customer if that customer also happens to be an "investment company or investment banker," a "broker or dealer," a "bank or banking firm," or an "insurance or reinsurance entity." Under this interpretation, if First Horizon is sued because it sold unsuitable securities to one "investment company" customer with a net worth of $10 million, and separately to another "investment company" customer with a net worth of $100 million, and those unsuitable securities caused each customer to sustain $11 million in losses, coverage is available for the second customer's lawsuit, but not the first's—even though both claims arise out of the same errors and omissions. This interpretation defies logic, finds no support in the plain language of the exclusion, ignores First Horizon's reasonable expectations of coverage, and violates Tennessee's rules of contract construction.

To adopt the Insurers' interpretation, the Court must find that the adjective "any" in the exclusion sweeps in terms like "customer" and "claimant" that are simply not present. The Court also must ignore the phrase "suspension of payment by" an enumerated entity, which would require a finding that the parties also intended to exclude coverage for claims alleging injury caused by a claimant's suspension of its own payment to itself, which makes no sense. These points alone demonstrate that the plain language of the exclusion supports only First Horizon's interpretation. This is bolstered by the carveback to the exclusion, which confirms that the parties did not intend to include "claimants" (*i.e.*, customers) among the enumerated entities triggering the exclusion. Thus, the Insurers' contorted interpretation violates the basic rule that policy language must be read as a whole rather than in isolation. Further, the Insurers' interpretation cannot be squared with the purposes of E&O coverage generally and of this exclusion specifically: E&O insurance protects against losses from alleged wrongful acts in First

Horizon's rendering of professional services to customers; the exclusion, in turn, prevents the Insurers from being on the hook for insolvencies or suspensions of payments by *third parties* that have nothing to do with First Horizon's professional services.  Indeed, "there is no way for the bank's insurer to underwrite the risk of the investment company's or broker-dealer's financial failure and consequent inability to pay investors."  Doc. 101-3, at 10.

Finally, the Insurers failed to show, as they must to survive this motion, why First Horizon's interpretation—that the exclusion does not apply to claimants that are customers of First Horizon—is unreasonable.  Indeed, because Defendants Aspen and Brit have stated that it is "self-evident" that the exclusion applies to "claims or damages arising from the insolvency of a *third party*," Doc. 101-2, at 2 (emphasis added), First Horizon's *same* interpretation is certainly reasonable.  Those statements unquestionably foreclose the Insurers' argument that their new reading of the exclusion is the *only* reasonable interpretation.  For the reasons outlined herein and in its opening brief, First Horizon's motion should be granted.

## I.  First Horizon Has Offered the Only Reasonable Interpretation of the Insolvency Exclusion.

According to the Insurers, coverage is barred because Sentinel was an "investment company" or a "broker or dealer in commodities," and its claims against First Horizon arose out of a bankruptcy.  Even if the Insurers were correct on these facts (as the Court must assume on this Rule 12(c) motion),[1] this is irrelevant to the Court's task in deciding this motion.  To grant

---

[1] The Insurers devote much of their Response to arguing that the Sentinel Lawsuits "arose out of" Sentinel's bankruptcy and that Sentinel was an "entity whose insolvency triggers the insolvency exclusion."  *See* Doc. 102, at 8–11.  Those determinations, however, would come up, if at all, on summary judgment, when First Horizon would show: (a) the Sentinel Lawsuits "arose out of" the alleged unsuitability of the PreTSLs that First Horizon sold to Sentinel; (b) Sentinel was registered as an "investment adviser," *not* as an "investment company"; and (c) the CFTC, the bankruptcy court, and Sentinel's own liquidation trustee all confirm that Sentinel was *not* a "broker or dealer in commodities."  The Court should reject the Insurers' premature

2

First Horizon's motion, the Court need only decide whether First Horizon's interpretation is reasonable. *See, e.g.*, *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 367 (Tenn. 1973). Here, First Horizon's interpretation is the *only* reasonable interpretation.

### A. The Plain Language of the Exclusion Confirms That the Insurers' Interpretation Is Unreasonable.

The Insurers do not dispute that exclusions are narrowly construed, *see Blaine Construction Corporation v. Insurance Company of North America*, 171 F.3d 343, 349 (6th Cir. 1999), or that "[t]he entire policy, including the insuring agreement, exclusions, exceptions and limitations, must be read as a whole and any ambiguity must be construed in favor of the insured," *Forrest Construction, Inc. v. Cincinnati Insurance Company*, 703 F.3d 359, 363 (6th Cir. 2013). Yet the Insurers ask the Court to violate these principles by focusing only on the word "any" while ignoring the rest of the exclusion and the Policy. Doc. 102, at 11.

"Exclusions help define and shape the scope of coverage, but they must be read in terms of the insuring agreement to which they apply." *Erie Ins. Exch. v. Columbia Nat'l Ins. Co.*, 2013 WL 395982, at *5 (Tenn. App. Jan. 30, 2013); *see also Standard Constr. Co., Inc. v. Md. Cas. Co.*, 2002 WL 1477886, at *7 (W.D. Tenn. May 15, 2002) (same). The Insurers' construction of the exclusion is flawed because it ignores the risk the Policy insures against: claims by First Horizon's customers involving Wrongful Acts in the investment advice First Horizon provided to them. *See* Doc. 101-1, at 10–13. Obviously, First Horizon's customers are the primary parties who would bring a covered "Claim" for a "Wrongful Act"—*i.e.*, those who can be "claimants" as that term is used in the exclusion—because by definition they are the ones to whom First Horizon provides "Professional Services." *See* Doc. 6-1, at 64, 68, FIPL § 2(a) (defining

---

invitation to take "judicial notice" of disputed facts that are not germane to whether the Insolvency Exclusion bars coverage for claims brought by First Horizon's own customers.

"Claim"); § 2(m) (defining "Professional Services"); § 2(q) (defining "Wrongful Act"). Thus, the E&O insuring agreement protects First Horizon against Claims that First Horizon's customers, as "claimants," make concerning alleged Wrongful Acts by First Horizon in the provision of professional services.

The Insolvency Exclusion, in turn, bars coverage for a subset of customer claims that involve the insolvency, bankruptcy, or a "suspension of payment by" one of the enumerated *third-party* entities. The Insurers' attempt to expand the scope of the exclusion to include *claimants* that are insolvent or that have suspended payments to themselves is entirely divorced from what the insuring agreement actually covers, and thus impermissible under Tennessee law. *See Forrest Constr.*, 703 F.3d at 364; *Standard Constr.*, 2002 WL 1477886, at *7; *Erie Ins.*, 2013 WL 395982, at *5; Doc. 101-1, at 10–13 (explaining the coverage provided by the policy and the claims the insolvency exclusion excludes).

The Insurers incorrectly accuse First Horizon of trying to narrow the exclusion by adding "limitations." *See* Doc. 102, at 12. On the contrary, First Horizon's interpretation of the exclusion stands on its plain language alone. As noted, the potential claimants that might assert E&O claims against First Horizon are its customers. Further, the words "claimant," "customer," and "client" are conspicuously absent from the enumerated entities listed in the exclusion, and it is well established in Tennessee that "the expression of one thing is the exclusion of another." *See D & E Constr. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 519 (Tenn. 2001).

To get around this fatal flaw in their interpretation, the Insurers argue that the adjective "any," which appears before the various enumerated entities in the exclusion, necessarily sweeps in the E&O claims of any claimant that could be characterized as one of the enumerated entities. But as the Insurers do not dispute, had they intended to exclude coverage for claims by certain

categories of claimants, they could have simply said so as they did in other exclusions. *See, e.g.*, Doc. 101-1, at 12 (collecting such exclusions). Thus, First Horizon's interpretation requires adding neither words nor complexity. It would have been far simpler to achieve the objective the Insurers claim they had by simply adding "claimant" to the list of enumerated entities, or adding language like "brought by a bankruptcy trustee." The absence of that language from the exclusion confirms the Insurers' interpretation is incorrect.

### B.    The Insurers' Interpretation Leads to Absurd Results.

Leaving aside the problems with the Insurers' plain language argument, an E&O policy exclusion that wholly eliminates coverage for a claim at the point a claimant files for bankruptcy, regardless of whether the insured's alleged wrongful acts cause or contribute to the bankruptcy, is unreasonable and inconsistent with First Horizon's reasonable expectations. *See* Doc. 101-1, at 8–9 (collecting cases applying the reasonable expectations doctrine under Tennessee law).[2]

The Insurers' only response to this argument is as follows: "the Insolvency Exclusion applies only in limited circumstances involving the insolvency of certain types of entities . . . . So for example, a claim arising out of the insolvency of a car dealership customer, or pharmaceutical company customer, of First Horizon would not implicate the Insolvency Exclusion." Doc. 102, at 14. The Insurers never explain why it would make sense for the Policy to discriminate against certain categories of customer claims, but not others, if the customer—at the time the claims are asserted—had one more dollar in liabilities than assets. Moreover, the

---

[2] The Insurers' assertion that Marsh drafted the policy is not only incorrect (as First Horizon will show at the proper stage of this case, if necessary), but irrelevant for purposes of determining whether the reasonable expectations doctrine applies. *See HCA, Inc. v. Am. Protection Ins. Co.*, 174 S.W.3d 184, 199 (Tenn. Ct. App. 2005) (applying reasonable expectations doctrine where insured was sophisticated healthcare company). The Insurers' reference to the reasonable expectations doctrine under Pennsylvania law, as interpreted by a federal court in Pennsylvania, *see* Doc. 102, at 13 n.6, should carry no weight here.

Insurers' interpretation renders the "suspension of payment by" language in the exclusion meaningless: it is impossible to imagine a claimant suing First Horizon for the claimant's suspension of its own payment to itself.  The Court should not allow the Insurers to shirk their coverage obligations by advancing these absurd interpretations.  *See, e.g.*, *HCA, Inc.*, 174 S.W.3d at 209 (rejecting interpretation that, taken to "its logical conclusion," would have unreasonable implications).

### C.    The Carveback Confirms That Because Sentinel Is the "Claimant," It Is Not One of the Entities Enumerated in the Exclusion.

The Insurers concede that "[a] primary objective in the construction of a contract is to discover the intention of the parties as a whole," *see* Doc. 102, at 7, but their strained interpretation of the exclusion also cannot be reconciled with the language in the carveback.  *See, e.g.*, *Forrest Constr.*, 703 F.3d at 366 (rejecting insurers' interpretation that "would render meaningless both the [] exclusion and the [] exception to the [] exclusion").  Simply put, the trigger of the exclusion does not list "claimants" among the entities whose insolvency might trigger the exclusion.  And the carveback to the Insolvency Exclusion plainly distinguishes the "foregoing entities"—the only entities whose insolvency *could* possibly trigger the exclusion— from a "claimant" like Sentinel, whose insolvency *cannot* trigger the exclusion.[3]  Therefore, the Insurers' reliance on the word "any" to shoehorn the word "claimant" into an exclusion where that word is unexpressed cannot withstand scrutiny.

In addition, the Insurers' explanation for an exception that carves back coverage for certain categories of third-party claimants' claims, but not others, is circular and unconvincing. For example, in arguing that claims involving a bankruptcy by customers like Sentinel can

---

[3] The carveback provides, "this exclusion will not apply to Wrongful Acts solely in connection with an Insured's investment on behalf of the *claimant* in the stock of one of *the foregoing entities*."  Doc. 6-1, at 71, FIPL § 3(m) (emphasis added).

trigger the carveback, the Insurers hypothesize that the exception might carve back coverage if First Horizon "invested on behalf of Sentinel in the stock of any identified entity."  Doc. 102, at 15.  But it is hard to fathom an E&O claim brought by Sentinel against First Horizon, involving a bankruptcy and arising out of First Horizon's investment on behalf of Sentinel in Sentinel's own stock, that would trigger the carveback.  Tennessee law does not permit an interpretation like this that renders language meaningless.  *See, e.g.*, *Forrest Constr.*, 703 F.3d at 366.

Similarly, the Insurers' suggestion that claims arising out of a bankruptcy by certain categories of claimants, "say a wealthy individual," might fall within the carveback, while similar claims by other categories of claimants are excluded, *see* Doc. 102, at 15, lacks any rational basis.  A claimant is a claimant.  Therefore, notwithstanding the parties' use of the adjective "any" before the enumerated entities in the exclusion, the carveback's clear distinction between *claimants* (*i.e.*, customers) and the foregoing *enumerated entities* confirms that the parties did not intend to conflate the meaning of those terms.

Finally, First Horizon's explanation for the carveback's coverage for First Horizon's "investments on behalf of a claimant in the stock of one of the foregoing entities" is the only interpretation that is consistent with the purpose of banker's E&O insurance.  *See generally* Doc. 101-1, at 13–15.  The carveback confirms coverage for First Horizon's errors and omissions in connection with its investments on behalf of its customers.  If the claimant is simply looking to recover its losses from First Horizon that were caused by no fault of First Horizon's, but the bankruptcy or suspension of payment by a third party in which the investments were made, the exclusion would bar those claims.  *See* Doc. 101-1, at 13–15.  This interpretation of the *entire* exclusion, rather than certain words read in isolation, is consistent with the fact that the Insurers are in the business of underwriting risks relating to First Horizon's wrongful acts.  They are not

7

in the business of underwriting suspensions of payments or bankruptcy risks of the business partners of their insureds that have nothing to do with the insured's own professional services.

## II.   Case Law and the Insurers' Own Statements Confirm That First Horizon's Interpretation Is Correct.

### A.   The Insurers Cannot Square Their New Interpretation of the Insolvency Exclusion With Their Prior Statements Regarding Its Purpose.

The Insurers' assert the exclusions in *Fiserv*, *Associated Community Bancorp* and other cases cited in First Horizon's opening motion were "significantly different from the Insolvency Exclusion" at issue here. Doc. 102, at 18.  Yet the Insurers argued elsewhere that those *same* cases involve "similar insolvency exclusions" that mean that "an insurer has no duty to defend or indemnify when the underlying claims 'arise out of' the insolvency or bankruptcy of a *third party*." *See* Doc. 101-2, at 14 (emphasis added); *see also* Doc. 101-4 at 14–17 (same).  The Insurers cannot have it both ways.

The Insurers also contend that the cases First Horizon cites (and that they have cited in the past) are inapplicable because "[u]nlike in those cases, the Insolvency Exclusion does not define the triggering insolvent entity by reference to entities in which the insured, for example, placed coverage for its client or invested funds on behalf of its client."  Doc 102, at 19.  This argument's premise is incorrect.  As First Horizon explained above, reading the exclusion trigger and exception together renders only one reasonable interpretation: that the enumerated entities are those third parties in which First Horizon invests funds on behalf of its customers.

Blindly focusing on irrelevant distinctions, the Insurers also note that "*Fiserv* and *Associated Community Bancorp* involved different parties, different facts, and completely different issues involving the insolvency exclusions that were applicable specifically to these cases." Doc. 102, at 16.  Of course, that is why the insolvency exclusion applied in those cases, but does not here—none of those cases involved the insolvency of a customer.  The prior

statements by Aspen, Brit, and other insurers show that insurers have repeatedly and consistently argued exactly what First Horizon posits here: the purpose of insolvency exclusions is to bar coverage for customer claims due to the bankruptcy, insolvency, or suspension of payment by *third parties*.  Doc. 101-1, at 16–20.  The Insurers cannot escape their prior statements of the exclusion's purpose, which confirm the reasonableness of First Horizon's interpretation.[4]

   **B.    The Insurers' Reliance on *Bickerstaff* Is Misplaced.**

   Unable to find a single authority to support their novel interpretation of the Insolvency Exclusion, the Insurers settle for *Zurich Specialties London Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*, 650 F. Supp. 2d 1064, 1071 (C.D. Cal. 2009), in which they claim "the court applied an insolvency exclusion, as written, to the insolvency of a customer."  Doc. 102, at 19.  The Insurers' reliance on *Bickerstaff* is misplaced.

   The court in *Bickerstaff* did not address the question at issue here: whether the Insolvency Exclusion bars coverage for claims *brought by a customer* when that customer is insolvent or in bankruptcy.  Instead, *Bickerstaff* involved a contribution claim by a *third party* accounting firm—not a customer or client—alleging that the insured actuarial services firm contributed to the insolvency of the accounting firm's customer, which subsequently sued the accounting firm.  *Bickerstaff*, 650 F. Supp. 2d at 1071.  That the third-party accounting firm's customer was also a

---

[4]  The Insurers attribute talismanic powers to the word "any" to support their expansive interpretation of the exclusion, but the exclusions in *Fiserv* and *Associated Community Bancorp* also excluded claims arising out of the bankruptcy of "***any*** broker or dealer in securities or commodities, or ***any*** bank or banking firm" (*Fiserv*) and "***any*** bank or banking firm, investment company, investment bank, or ***any*** broker or dealer in securities or commodities, [or] ***any*** insurance or reinsurance entity" (*Associated Community Bancorp*).  Doc. 101-2, at 12 (emphasis added); Doc. 101-1, at 17 n.11 (emphasis added).  Based on this language, Aspen and Brit explained that they "clearly never intended to cover claims or damages arising from the insolvency of a ***third party*** broker or dealer" and that "[t]his fact is self-evident by the plain and unambiguous Policy language that expressly excludes coverage for claims or damages *arising out of the bankruptcy of . . . **any** broker or dealer in securities*[.]"  Doc. 101-2, at 2 (emphasis added) (internal quotation marks omitted).

client of the insured actuarial services firm was not relevant to the *Bickerstaff* analysis.  *Id.*  *Bickerstaff* did not address whether claims brought by the insured's own customer are barred by an insolvency exclusion if the customer happens to be bankrupt or insolvent.  Thus, the case in no way supports the Insurers' argument here.

## III.    Conclusion

The Insurers' interpretation of the Insolvency Exclusion is simply illogical and unreasonable.  The Insurers argue that the alleged errors and omissions in First Horizon's professional services "caused a liquidity crisis at Sentinel" and "precipitated [its] bankruptcy and eventual liquidation."  Doc. 102, at 1, 5.  What the Insurers did not and *cannot* explain, is why the Sentinel Lawsuits would be barred solely because the claims were asserted by Sentinel *after* it filed for bankruptcy.  What if Sentinel had sued First Horizon a week *before* filing for bankruptcy?  Such an arbitrary interpretation of the exclusion is specious and conflicts with many insurers' prior statements in other courts about the purpose of the exclusion.  Defendants Aspen and Brit perhaps put it best:  "[n]or was the [bankers E&O] Policy intended to serve as a warranty or guarantee for [the insured's] *business transactions* with broker dealers, banks, or banking firms that become insolvent."  Doc. 101-5, at 22 (emphasis added).  "[Aspen and Brit] clearly never intended to cover claims or damages arising from the insolvency of a *third party* . . . ."  Doc. 101-2, at 2 (emphasis added).  These statements regarding the "bankruptcy (liquidation) or suspension of payment" by a *third-party* are wholly consistent with, and confirm the reasonableness of, First Horizon's interpretation of the Insolvency Exclusion.

To the extent the Court concludes the Insurers' new interpretation in this case also is reasonable (which it is not), First Horizon's interpretation is no less reasonable, and the exclusion thus must be construed against the Insurers.  *See* Doc. 101-1, at 9 (collecting cases).  Either way, First Horizon's motion should be granted.

Respectfully submitted this 20th day of May, 2013.


　/s/ Anthony P. Tatum
Anthony P. Tatum
Georgia Bar No. 306287
Shelby S. Guilbert
Georgia Bar No. 315101
Michael B. Wakefield
Georgia Bar No. 950517
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA  30309
404-572-4600 (Phone)
404-572-5138 (Fax)
ttatum@kslaw.com
sguilbert@kslaw.com
mwakefield@kslaw.com

Thomas Lang Wiseman
Tennessee Bar No. 18293
Christopher Lynn Patterson
Tennessee Bar No. 23823
WISEMAN BRAY PLLC
1665 Bonnie Lane, Suite 106
Memphis, TN 38016

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 20, 2013, I electronically filed the foregoing PLAINTIFFS' REPLY

IN SUPPORT OF THEIR MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS with

the Clerk of Court which will automatically send notice of such filing to the following attorneys:

DAVID A. WILFORD, admitted *pro hac vice*
CHRISTOPHER T. CONRAD,
  admitted *pro hac vice*
JUSTIN SECCOMBE, admitted *pro hac vice*
Flint Creek Corporate View
760 W. Main Street, Suite 210
Barrington, Illinois 60010
(224) 848-4721
dwilford@wilfordconrad.com
cconrad@wilfordconrad.com
jseccombe@wilfordconrad.com

RONALD L. HARPER, Tennessee BPR #15470
NICOLE M. GRIDA, Tennessee BPR #25416
Brinkley Plaza
80 Monroe Avenue, Suite 800
Memphis, Tennessee  38103
(901) 527-0214
ron.harper@leitnerfirm.com
nicole.grida@leitnerfirm.com

*Counsel for Certain Underwriters at Lloyd's and Aspen Insurance UK Limited*

WILLIAM E. SMITH, admitted *pro hac vice*
MARY CATHERINE MARTIN,
  admitted *pro hac vice*
1776 K Street NW
Washington, DC  20006
(202) 719-7000
wsmith@wileyrein.com
mmartin@wileyrein.com

ROBERT F. MILLER, Tennessee BPR #7797
999 S. Shady Grove Road, Suite 500
Memphis, Tennessee  38120
(901) 259-7100
rfmiller@farris-law.com

*Counsel for U.S. Specialty Insurance Company*

MERRIL HIRSH, admitted *pro hac vice*
RICHARD C. AMBROW,
  admitted *pro hac vice*
401 9th St., N.W., Suite 1000
Washington, D.C. 20004
(202) 662-2032
merril.hirsh@troutmansanders.com
richard.ambrow@troutmansanders.com

WILLIAM H. HALTOM, JR.,
  Tennessee BPR #6361
JUSTIN JOY, Tennessee BPR #023722
2900 Once Commerce Square
40 South Main Street
Memphis, Tennessee  38103
(901) 525-8721
haltomw@thomasonlaw.com
joyj@thomasonlaw.com

*Counsel for Federal Insurance Company*

I also certify that I e-mailed a copy to the attorneys referenced above.

  /s/ Anthony P. Tatum
Anthony P. Tatum